# COURT OF APPEALS OF VIRGINIA

**Record No. 1330-25-3**

CORDERRO MONTEZ RUCKER

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Causey, Raphael and Duffan

Argued at Lexington, Virginia

Opinion Issued August 4, 2026[*]

**FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY**
Stacey W. Moreau, Judge

Matthew L. Pack (M. Pack Law, PLLC, on brief), for appellant.

Jason D. Reed, Senior Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

**MEMORANDUM OPINION BY**
**JUDGE KEVIN M. DUFFAN**

Corderro Montez Rucker was found guilty by a Pittsylvania County Circuit Court jury of first-degree murder, use of a firearm in the commission of a murder, and shooting into an occupied dwelling. Code §§ 18.2-32, -279, -53.1. Rucker was sentenced to life in prison plus 13 years, with 5 years suspended, for an active term of life incarceration plus 8 years. The issues on appeal are whether the circuit court erred in: (1) disallowing Rucker from asking the medical examiner a hypothetical question, (2) allowing the Commonwealth to present selected portions of Rucker's custodial interview, and (3) refusing Rucker's jury instruction on the heat of passion. Finding no error, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND

## I. The underlying offense

On February 12, 2023, Rucker and his girlfriend drove to a Super Bowl party in a silver Mercedes. While there, Rucker got into an argument with Demetrius Gilbert; they both share children with the same woman. The two started "tussling" and "wrestling on the ground" until a third party broke up the fight. Later, Rucker stated that he "got beat the fuck up" and did not want anyone "laughing and talking about [him]." He stated that someone "put a gun on [him]" and that someone "put a revolver on [his] ribs, saying they were going to kill [him], then they beat [him] up, so [he] was mad."

Another party attendee, Lewis Rose, testified that there were about "thirty to forty cars" at the party, and more arrived throughout the night. The house was on a single-lane road, and cars were parked on both sides, all the way to the cul-de-sac at the end of the road. At the end of the football game, Rose, his wife, and his two children left the party house and walked up the hill to their car. When they saw that their car was blocked by another car, Rose's wife went back down to find the other car's owner.

About five minutes after she left, Rose heard his wife scream. Rose went after her and passed Rucker and two other people walking up the hill.[2] Rose testified that Rucker "[was] sobbing saying how he got beat up." "The other two people were pleading with him to let it go, [but] he was aggravated and said he would kill the motherfucker[]" because "[he was] embarrassed about it." Rose continued down the hill while Rucker and the other two men went up the hill.

---

[2] Rose was able to identify Rucker because of Rucker's blond dreadlocks, sleeveless shirt, and glasses. The Commonwealth admitted into evidence a picture of Rucker with his blond dreadlocks; he did not object.

Once Rose met with his wife from the garage of the party house, they both started back up the hill, at which point Rose saw Rucker grab a gun from the Mercedes. Rose knew that Rucker was grabbing the gun because Rucker "racked [it]" making a "chuc-chuch" sound. The next time Rose saw Rucker, he had the gun with him in the middle of the driveway of the party house. When Rucker started shooting, the Roses had moved their car "about three car lengths up the road." As they were driving away, Rose saw "[r]epetitive muzzle flashes and repetitive shooting behind him." When Rucker stopped shooting, Rose started shooting his own firearm when Rucker's Mercedes passed them, because "[he] was fearful for [his] family and [his] own life." He shot towards the Mercedes and saw it crash. Thirty empty shell casings were later found at the scene.

Another witness, Kwame Berger, was in the garage with another attendee, Jonathan Robertson. Initially, when Berger and Robertson heard shots fired, they did nothing because "[they] didn't know [they] were getting shot at." When they retreated into the house, Robertson told Berger that he was shot. Berger saw blood coming from Robertson's body, helped Robertson to the floor, and "put pressure on the bullet hole." Berger then placed Robertson in the car of another party-goer and brought him to the hospital, where Robertson was pronounced dead.

Neither Rose nor Berger were aware of the fight between Rucker and Gilbert when it initially happened. Neither Rose nor Berger had a firearm when they were in the party house.

## II. The procedural history

On October 16, 2023, a grand jury in Pittsylvania County returned indictments for: (1) first-degree murder, (2) possession of a firearm after having been convicted of a violent felony,

(3) shooting into an occupied building, and (4) use of a firearm in the commission of a felony. Rucker pleaded not guilty to all four charges.

Trial commenced on April 3, 2025. At the conclusion of the trial, the jury found Rucker guilty of first-degree murder, maliciously shooting into or at an occupied dwelling, and use of a firearm in the commission of a murder. On April 18, 2025, Rucker filed a motion to set aside the jury verdict, which was subsequently denied by the circuit court on June 23, 2025. Rucker was sentenced to life in the penitentiary plus 13 years, with 5 years suspended, for an active sentence of life in the penitentiary plus 8 years. Rucker appeals.

ANALYSIS

I. Standard of Review

This appeal involves challenges to the circuit court's evidentiary rulings and the denial of a proposed jury instruction. Both issues are reviewed for an abuse of discretion.

There are "three principal ways" by which a court abuses its discretion: "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). An abuse of discretion is not shown because "'[r]easonable trial judges and even some members of [an appellate court], had they been sitting as trial judges in this case,' might have reached a different conclusion than the one under review." *Min Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (first alteration in original) (quoting *Coe v. Commonwealth*, 231 Va. 83, 88 (1986)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 287 Va. 602, 620 (2009)).

## II. The Evidentiary Rulings

"The admissibility of evidence is within the broad discretion of the trial court." *Ricks v. Commonwealth*, 39 Va. App. 330, 334 (2002) (quoting *Blain v. Commonwealth*, 7 Va. App. 10, 16 (1988)). An appellate court "[will] consider the entire record on appeal, not just the evidence before the court at the time of the ruling." *Id.* at n.3 (citing *Wells v. Commonwealth*, 6 Va. App. 541, 548 (1988)). A trial court's judgment should be affirmed as long as "the record contains sufficient information to support [a] proper reason." *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 542 (2016) (quoting *Haynes v. Haggerty*, 291 Va. 301, 305 (2016)).

### A. Playing Selected Clips of Rucker's Interview

Rucker argues that the circuit court abused its discretion when it allowed the Commonwealth to present only specific clips from his custodial interview, rather than playing the entire two-and-a-half hour interview "to put [the clips] into context." We disagree.

The rule of completeness encompasses both a codified evidence rule and a common law principle. Under Virginia Rule of Evidence 2:106, "[w]hen part of a writing or recorded statement is introduced by a party, . . . the court may require the offering party to introduce any other part of the writing or recorded statement which ought in fairness to be considered contemporaneously with it." *Curry v. Commonwealth*, 84 Va. App. 339, 349 (2025) (alterations in original) (quoting Va. R. Evid. 2:106(a)). However, the remaining portions are not admissible if they are "inadmissible under the Rules of Evidence." *Id.* at 349-50 (quoting Va. R. Evid. 2:106(a)).

The common law version of the rule of completeness applies to oral statements as well as written and recorded statements. *Id.* at 350. Under the common law principle, "[w]hen a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together." *Id.* (alteration in original)

- 5 -

(quoting *Pierce v. Commonwealth*, 2 Va. App. 383, 389 (1986)). "The ancient rule in this Commonwealth is that the prosecution has no right to introduce selected portions of a defendant's confession and exclude those which tend to mitigate, justify, or excuse the offense charged." *Id.* (quoting *Boggs v. Commonwealth*, 229 Va. 501, 517 (1985)). "[I]f the prosecution fails to prove the whole statement, the accused is entitled to put in evidence all that was said to and by him at the time which bears upon the subject of controversy, including any exculpatory or self-serving declarations." *Id.* (alteration in original) (quoting *Pierce*, 2 Va. App. at 389).

Here, the Commonwealth called Investigator Scott Wyatt to testify about his investigation into Rucker and his subsequent interview with him. Before the Commonwealth admitted the interview clips into evidence, Rucker objected, citing the rule of completeness, and argued "the entire thing [had] to be played to put it into context." When the Commonwealth responded that the entire interview was "two-and-a-half-hours," the court stated the Commonwealth "can do clips" but that Rucker could "identify each [clip] individually." Rucker indicated that he had the full interview, and the Commonwealth added that it was "prepared to play any portion [Rucker] wishe[d] to play." The court reminded Rucker that he would have the opportunity to cross-examine Investigator Wyatt and overruled his objection "with regard to the entirety of the two-and-a-half-hour interview."

During the trial and in his subsequent motion to set aside the jury verdict, Rucker did not specify or proffer what the remaining interview portions would add to the context of the admitted clips, or how the clips were mitigating or exculpatory. His argument, then and now, is simply that the rule of completeness required the Commonwealth the play the full interview. At the hearing on the motion immediately before his sentencing hearing, Rucker indicated that he rested

- 6 -

on his written motion and presented no additional argument, but proffered a digital copy of the full interview.[3]

A similar issue was before this Court in *Murray v. Commonwealth*, 71 Va. App. 449 (2020). There, the defendant argued that through the completeness doctrine, she should have been able to play a full interview she had with a detective. *Id.* at 459. The defendant did not proffer the video, so this Court found that it "[could not] reach the merits of that argument." *Id.* "To be adequate, a proffer must allow this Court to determine the 'admissibility of the proposed testimony.'" *Id.* at 460 (quoting *Massey v. Commonwealth*, 67 Va. App. 108, 132 (2016)). The Court stated that the defendant's proffer—that "she didn't do [the crime] on purpose"—was inadequate to determine whether the rule of completeness applied. *Id.*

Rucker's conclusory argument that "[t]he [c]ourt permitted the Commonwealth to selectively present only inculpatory excerpts of the [d]efendant's statement while excluding other contemporaneous portions of the same interview that put such statements into context" is not a sufficient basis for this Court to determine whether the doctrine of completeness applies. Here, we have even less detail than that in *Murray*. Because Rucker did not provide an adequate proffer on how the full two-and-a-half hour interview would provide mitigating, exculpatory, or contextual information, and additionally, because the full interview was not made a part of the record, we cannot reach the merits of his rule of completeness argument. *Murray*, 71 Va. App. at 459. Accordingly, we find the circuit court did not abuse its discretion in overruling Rucker's objection against the Commonwealth's introduction of specific interview clips.[4]

---

[3] The full interview video was not submitted to this Court for appellate review. Even if Rucker completed the record by doing so, he does not provide supporting arguments on why the full interview should be considered according to the rule of completeness.

[4] Rucker also argued that the court's suggestion that he admit his own interview clips was an "[invasion] of [his] Fifth Amendment Right to Not Produce Evidence." He does not provide any legal authority supporting this argument. Therefore, it is waived. "Rule 5A:20(e) requires

B. Hypothetical Questions to the Medical Examiner

Next, Rucker argues that the circuit court abused its discretion when prohibiting him from asking the medical examiner, Dr. Amy Tharpe, the following hypothetical question: "if [Robertson] was walking straight . . . not in any hurry, and not bent over, what can you surmise about the angle of this?" We find no abuse of discretion in the circuit court's denial of that hypothetical question.

"An expert witness must be 'qualified as an expert by knowledge, skill, experience, training, or education' on the subject." *Stevens v. Commonwealth*, 72 Va. App. 546, 559 (2020) (quoting Va. R. Evid. 2:702(a)(i)-(ii)). "In Virginia criminal cases, an 'expert may give an opinion based upon his knowledge of facts disclosed in his testimony or he may give an opinion based upon facts in evidence assumed in a hypothetical question.'" *Jones v. Commonwealth*, 54 Va. App. 219, 225 (2009) (quoting *Simpson v. Commonwealth*, 227 Va. 557, 565 (1984)); Va. R. Evid. 2:703. "Generally, an expert witness in Virginia has not been permitted to base his opinion on facts *not in evidence*." *Id.* (emphasis added) (quoting *Simpson*, 227 Va. at 565).

Here, Dr. Tharpe gave her qualified expert opinion that Robertson died from "a gunshot wound to the back." On cross-examination, Rucker asked Dr. Tharpe about the meaning of the trajectory and deviation of the entrance and exit points of the bullet through Robertson's body. Then, Rucker attempted to ask Dr. Tharpe a hypothetical question regarding Robertson's bodily position when he was shot; the Commonwealth objected to the questioning because it required Dr. Tharpe to assume a fact not in evidence.

that the appellant's opening brief include 'principles of law and authorities' supporting each assignment of error." *Moncrieffe v. Deno*, 76 Va. App. 488, 503 (2023) (quoting Rule 5A:20(e)). "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)).

Berger was the only witness present at trial who was with Robertson when he was shot. Berger was consistent in his testimony that he, Robertson, and a third person were standing face-to-face when the shooting started and that they initially did nothing because they did not know they were being shot at. During cross-examination, Berger confirmed that he and Robertson did not "run back into the house," they did not "hurry[] . . . run[], or nothing like that," and they just "moseyed back into the house." Berger discovered that Robertson was shot only after they got back inside the house, and there is no indication that he knew Robertson's physical position when the bullet struck him. Rucker's question was not based on a fact in evidence, therefore, the circuit court did not abuse its discretion when sustaining the Commonwealth's objection. *Jones*, 54 Va. App. at 225.

Additionally, under certain circumstances an expert witness may provide opinion testimony based on facts not in evidence, but those facts must be "within [the witness's] personal knowledge." *Id.* at 227; *Simpson*, 227 Va. at 566 (finding that although the medical examiner partially based his opinion on the cause of death on medical records not in evidence, a "sufficient factual basis" was laid based on his "personal observations[,] . . . his experience and training, and the exhibits in evidence").

Here, Dr. Tharpe performed the autopsy on Robertson, drew his bodily fluids for toxicology testing, and prepared a report of the examination. Dr. Tharpe was qualified as an expert to "give an opinion on the cause and manner of death" and concluded that Robertson died from a gunshot wound to the back. We find that Dr. Tharpe's expertise is within the scope of autopsies, and not ballistics. She was specifically qualified as an expert in the cause and manner of death, and in reviewing her qualifications, it cannot be inferred that ballistics is within her "'skill, experience, training, or education' on the subject." *Stevens*, 72 Va. App. at 559 (quoting Va. R. Evid. 2:702(a)(i)-(ii)). Accordingly, while Dr. Tharpe may give opinions based on facts

*not in evidence*, she may only answer hypotheticals "within [her] personal knowledge" on autopsies. *Jones*, 54 Va. App. at 227. While she was within her expertise to testify on the damage to Robertson's body due to the bullet passing through him, Rucker's proposed hypothetical question—on where the bullet could have traveled if Robertson was walking straight when he was shot—was not within her personal knowledge. Therefore, the circuit court did not err in sustaining the Commonwealth's objection to this question.

### III. The Heat of Passion Jury Instruction

Rucker argues that the circuit court erred when it refused his proposed jury instruction defining the heat of passion. Specifically, he argues that he was entitled to the instruction because he was "beat up." We disagree.

"Whether to give or deny jury instructions 'rest[s] in the sound discretion of the trial court.'" *Hilton v. Commonwealth*, 293 Va. 293, 302 (2017) (alteration in original) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). "A defendant is only 'entitled to an instruction upon his theory of the case' when 'such instruction is supported by some appreciable evidence.'" *Pinedo v. Commonwealth*, 72 Va. App. 74, 81 (2020) (quoting *Williams v. Commonwealth*, 64 Va. App. 240, 246 (2015)). Entitlement to an instruction requires "more than a mere scintilla of evidence." *Id.* (quoting *Williams*, 64 Va. App. at 247). "For purposes of resolving the issue of the trial court's jury instruction, we are concerned with [appellant's] version of the events surrounding the crime[] and not a determination of its truthfulness." *Arnold v. Commonwealth*, 37 Va. App. 781, 787 (2002) (quoting *Sam v. Commonwealth*, 13 Va. App. 312, 322 (1991)).

Here, Rucker submitted a jury instruction defining malice and the heat of passion, which was refused by the circuit court. Instead, the court used a model jury instruction defining malice only, leaving off the definition for the heat of passion. We find that the circuit court did not

abuse its discretion in refusing Rucker's heat of passion instruction because Robertson, the victim of the shooting, was not involved in the fight that upset Rucker.

Deliberate and intentional acts are not malicious if they involve the heat of passion. *Williams*, 64 Va. App. at 249. "Malice and heat of passion are *mutually exclusive*." *Arnold*, 37 Va. App. at 789 (emphasis added) (quoting *Barrett v. Commonwealth,* 231 Va. 102, 106 (1986)). Heat of passion is not malicious "when provocation reasonably produces fear that causes one to act on impulse *without conscious reflection*." *Williams*, 64 Va. App. at 249 (emphasis added) (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)). "'Heat of passion' refers to 'the *furor brevis* which renders a man deaf to the voice of reason.'" *Id.* (quoting *Graham*, 31 Va. App. at 671). "[T]he law requires the *simultaneous* occurrence of *both* reasonable provocation and passion." *Id.* (quoting *Graham*, 31 Va. App. at 671). Additionally, "where it is not the victim of the crime who provoked the defendant's heat of passion, the evidence will not support a finding of heat of passion." *Id.* (citing *Arnold*, 37 Va. App. at 789).

In *Williams*, the defendant and his friend, Brown, went to a gas station. *Id.* at 244. While Williams was outside, Brown got into an altercation with a woman inside, who was accompanied by the victim and another person. *Id.* When Williams and Brown left the store, the victim also left, at which point Brown hit the victim on the back of his head. *Id.* Williams proceeded to get a gun out of the car, shoot the victim, and fire six additional shots. *Id.* Williams's reason for doing so was because his friend—living in a different state—was killed at a gas station. *Id.* at 244-45. This Court found that Williams's following acts were deliberate: bringing a loaded gun to the store (forbidden as a convicted felon), getting a gun from under the seat of the car, pointing it at the victim, and pulling the trigger.[5] *Id.* at 251-52.

---

[5] The *Williams* Court also noted that "the victim did nothing to invoke fear or rage in [the defendant]" and that "the news of [the defendant's] friend's death . . . was not a result of 'reasonable provocation' *by the victim*." 64 Va. App. at 252-53; *Arnold*, 37 Va. App. at 789-90

In this case, Rucker was in a physical altercation with Gilbert during a Super Bowl party. Rucker was embarrassed, because he is a "skinnier" and "small[er]" individual; he also acknowledged that he and Gilbert both share children with the same woman. Rucker stated that he "got beat up" and did not want anyone "laughing and talking [about him]." So, he left the party with his friends, walked uphill, and grabbed his firearm from his car. As Rucker was going downhill, Rose testified that "[Rucker] [was] sobbing saying how he got beat up." "The other two people were pleading with him to let it go, [but] he was aggravated and said he would kill the motherfucker[]" because "[he was] embarrassed about it." Neither Rose, nor Berger, who was with Robertson when he was shot, were aware of the fight between Rucker and Gilbert. They also did not have firearms when they were inside the party house.

Similarly to the *Williams* defendant, Rucker engaged in a series of steps culminating in grabbing a firearm from his vehicle and intentionally and indiscriminately shooting into an occupied garage of party-goers. 64 Va. App. at 251-52. Robertson "did nothing to invoke fear or rage in" Rucker. *Id.* at 252. Robertson was an unarmed and uninvolved bystander who was completely unaware of the fight between Rucker and Gilbert. *Id.* Therefore, the circuit court did not err in refusing his jury instruction.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*

---

(finding that because the victim-store clerk did not "invoke fear and/or rage" in the defendant before being shot during a robbery, the defendant was not entitled to a manslaughter instruction).

- 12 -